IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 1:14-cr-338 (RDA) |
| | ) | |
| CARLOS DAVID MALDONADO, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant Carlos Maldonado's ("Defendant")
Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Motion"), Reply,
Supplemental Motion, and Addendum to Supplemental Motion, and Second Addendum to
Supplemental Brief (together "Supporting Documents").  Dkt. Nos. 45; 47; 52.  Considering the
Motion, the Supporting Documents, the Government's Opposition (Dkt. 51), and the
Government's Supplemental Response (Dkt. 57), and for the reasons that follow, it is hereby
ORDERED that Defendant's Motion is DENIED.

### I.   BACKGROUND

On November 25, 2014, Defendant pleaded guilty in this Court to one count of conspiring
to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846.  The Court
then dismissed the remaining two counts of the indictment.  On February 18, 2015, the Court
sentenced Defendant to 120 months of imprisonment and five years of supervised release.
Following his sentencing, Defendant reported to USP Victorville to begin serving his sentence.

In February of 2021, Defendant's request for compassionate release was denied by the
warden of USP Victorville.  At some point after August 16, 2021, the Bureau of Prisons ("BOP")
moved Defendant to a different prison, FCI Sheridan.  Defendant has filed two *pro se* letters with

the Court, the first of which serves as his initial compassionate release motion.  *See* Dkt. Nos. 45;
47.  Defendant asserts that he has several medical conditions that place him at an increased risk of
serious illness if he contracts COVID-19, including endocarditis, two aortic valve replacements,
cardiovascular disease, high blood pressure, vitamin D deficiency, and a heart murmur.  Defendant
contends that he will soon need triple bypass surgery.  After Defendant filed his *pro se*
compassionate release motion in this Court, the Court permitted the Government to file an out-of-
time reply.  Through counsel, Defendant then filed a supplemental memorandum in support of his
compassionate release motion on September 24, 2021, to which the Government replied on
October 4, 2021.  *See* Dkt. Nos. 52; 57.

## II.  ANALYSIS

Defendant requests that, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), this Court release him
from detention at FCI Sheridan.  Defendant asserts that he has exhausted administrative remedies,
as he had not received a response from the warden thirty days after filing his request for
compassionate release with USP Victorville.  The Government agrees that Defendant has
exhausted his administrative remedies.  Recent authority from the Fourth Circuit makes clear that
Defendant's motion is ripe for review.  *See United States v. Muhammad*, 16 F.4th 126, 129 (4th
Cir. 2021) ("The text of § 3582(c)(1)(A) plainly provides that a defendant may file a motion on
his own behalf 30 days after the warden receives his request, regardless of whether the defendant
exhausted his administrative remedies.").

Having determined that Defendant has satisfied the exhaustion requirement, the Court must
next determine whether "extraordinary and compelling reasons" and the "factors set forth in
section 3553(a)" warrant Defendant's release.  18 U.S.C. § 3582(c)(1)(A); *see also United States
v. McCoy*, 981 F.3d 271 (4th Cir. 2020).

The First Step Act, the statute authorizing courts to consider motions for compassionate release like the one Defendant brings, states that release is appropriate only in "extraordinary and compelling" circumstances.  18 U.S.C. § 3582(c)(1)(A).  The text of the statute does not define the term, however, and Congress instead delegated to the United States Sentencing Commission ("the Sentencing Commission") the responsibility of defining the scope of that phrase.  *McCoy*, 981 F.3d at 276.  Accordingly, 28 U.S.C. § 994(t) provides that:

> [t]he Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples.  Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.

28 U.S.C. § 994(t).  The Sentencing Commission determined, in pertinent part, that:

> [u]pon motion of the Director of the Bureau of Prisons under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that – (1)(A) Extraordinary and compelling reasons warrant the reduction; . . . (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and (3) The reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Further, the Sentencing Commission has indicated that if a defendant "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)," then "extraordinary and compelling reasons exist" if the defendant's medical condition, age, family circumstances, or other reason justify such release.  U.S.S.G. § 1B1.13, cmt. n.1.  In weighing the danger the defendant poses to the community, courts are directed to consider a number of factors, including "the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves a minor victim[;]" "the weight of the evidence against the

3

person;" "the history and characteristics of the person[;]" and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).

After the enactment of the First Step Act, many district courts, including this Court, have determined that the factors set forth in U.S.S.G. § 1B1.13, cmt. n.1 "provide[ ] helpful guidance, but . . . do[ ] not constrain a court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)." *United States v. Rodriguez*, 451 F. Supp. 3d 392, 401 (E.D. Pa. 2020) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 582 (M.D.N.C. 2019)) (citing *United States v. Redd*, 444 F. Supp. 3d 717, 725-26 (E.D. Va. 2020) and other cases).  To be sure, § 3582(c)(1)(A) "requires [ ] that sentence reductions be consistent with 'applicable policy statements.'"  *McCoy*, 981 F.3d at 281 (quoting 18 U.S.C. § 3582(c)(1)(A)).  But there remains "no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'"  *McCoy*, 981 F.3d at 284 (emphasis in original) (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d Cir. 2020)).

As such, this Court has "join[ed] other courts in concluding that a court may find . . . that extraordinary and compelling reasons exist based on facts and circumstances other than those set forth in U.S.S.G. § 1B1.13 cmt. n.1(A)-(C). . . ." *Redd*, 444 F. Supp. 3d at 726.  Accordingly, this Court will treat the § 1B1.13 cmt. n.1(A)-(C) factors as a guide, but not as an exhaustive list of circumstances that could justify compassionate release.[1]  *See also United States v. Jackson*, No.

---

[1]  The *McCoy* court noted, however, that § 1B1.13 "remains helpful guidance even when motions are filed by defendants." 981 F.3d at 282 n.7.  In the wake of *McCoy*, this circuit continues to consult § 1B1.13 for compassionate release motions.  *See, e.g.*, *United States v. Trotman*, No.

4

3:17-cr-29-2, 2021 WL 1723653, at *1 (E.D. Va. Apr. 30, 2021) (finding "[t]he policy statements are not binding but are informative and may be considered") (citing *McCoy*, 981 F.3d at 276).

### A.  Extraordinary and Compelling Reasons

Defendant, now 37 years old, argues that his extensive heart conditions should allow him to be released so that he may eventually receive triple bypass surgery and consult his doctor at Stanford University Medical to receive proper care.  Dkt. Nos. 45 at 1; 47 at 1.  Defendant argues that COVID-19 outbreaks at Victorville result in inmates being placed on cell lockdown, which is stressful and isolating.  Dkt. Nos. 45 at 1; 47 at 1-2.  He further argues that he should be released under the First Step Act and provides several ways he has worked on his rehabilitation, including taking classes, working with the suicide prevention unit, and his plans to volunteer once released.

Next, Defendant asserts that his underlying medical condition increases the risk that his vaccination will not protect him from infection and hospitalization.  According to the CDC, individuals with heart conditions are more susceptible to severe illness from COVID-19, and those who have weakened immune systems may not be fully protected regardless of vaccination status. *See* Dkt. 51 at 4-5.  Defendant contends that he has received no follow-up appointments to monitor his heart condition while in custody and the BOP records do not even accurately record which valves were replaced.  According to Dr. Amy Kossoff, Defendant remains at a "higher-than-normal risk of a more complicated disease course" and may have prolonged symptoms that could

---

20-6217, 2020 WL 7392287, at *2 (4th Cir. Dec. 17, 2020) (per curiam); *United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (per curiam); *United States v. Nabaya*, No. 3:17-cr-3, 2021 WL 54361, at *6 (E.D. Va. Jan. 6, 2021); *United States v. Prater*, No. 3:13-cr-133, 2021 WL 54364, at *3 (E.D. Va. Jan. 6, 2021); *Perkins v. United States*, No. 2:18-cr-177, 2020 WL 7364222, at *2 (E.D. Va. Dec. 15, 2020); *United States v. Reid*, No. 2:02-cr-172-7, 2020 WL 7318266, at *2 (E.D. Va. Dec. 10, 2020).

affect his quality of life. *Id.* at 1-2. Defendant is more vulnerable because he has "less cardiac reserve," which affects his cardiac function when faced with a severe lung infection. *Id.*

Defendant does not exhibit an extraordinary and compelling reason for release as he has not established a particularized susceptibility to COVID-19 nor a particularized risk of contracting COVID-19 at FCI Sheridan. *See United States v. Adamson*, 831 F. App'x 82, 83 (4th Cir. 2020) (per curiam). Defendant's hypertension is listed by the CDC as a condition that can make him more likely to get very sick from COVID-19. Yet his heart valve replacements, which were a result of his endocarditis, are not specifically listed as putting Defendant at a higher risk of serious illness. Dkt. Nos. 54 at 3; 55 at 53; *see also* People Who Are at Increased Risk for Severe Illness: People with Underlying Medical Conditions, CDC, https://tinyurl.com/y9chuzkm (last visited Oct. 13, 2022). In addition, Defendant's medical expert, Dr. Kossoff, stated that Defendant "potentially could face a more severe case" of COVID-19 than that of a healthy vaccinated person because of his medical conditions. Dkt. 54 at 3. Dr. Kossoff also stated that she believes Defendant is as a "higher-than-normal" risk of a more complicated disease course should he be infected with COVID-19. *Id.* at 3-4. However, Dr. Kossoff acknowledged that Defendant is unlikely to get severely ill or die from COVID-19 due to being vaccinated. *Id.* at 3.

Courts in the Fourth Circuit and across the country have faced similar cases when assessing motions for compassionate release since the start of the COVID-19 pandemic in 2020. In particular, judges in this District have weighed a defendant's vaccination status against the severity of the defendant's medical conditions, particularly whether COVID-19 would prove potentially fatal for the defendant. *See United States v. Stoddard*, No. 1:14-cr-76, 2021 WL 2379568, at *5 (E.D. Va. June 9, 2021) (finding that a sentence reduction should not be granted for COVID-19 concerns when the defendant was vaccinated, even though the defendant had hypertension and

6

hepatitis C); *United States v, Cabaase*, No. 2:10-cr-57, 2021 WL 2346106, at *4 (E.D. Va. June 8, 2021) (declining to release an inmate who "lacked a significant showing of potential fatality" from contracting COVID-19, particularly when vaccinated). Defendant in this case has not shown that his heart condition or his hypertension would prove potentiality fatal should he contract COVID-19, Dkt. 54 at 3, nor has he shown that his medical conditions are terminal or severely limit his ability to function. *See United States v. Smith*, No. 3:15-cr-101, 2021 WL 3641463, at *2-3 (E.D. Va. Aug. 17, 2021) (finding that a vaccinated defendant with hypertension and other medical conditions that create a higher susceptibility to COVID-19 did not demonstrate a particularized susceptibility because the defendant was vaccinated, and the conditions could be managed).

Defendant's expert has opined that Defendant has done quite well since his surgery and is unlikely to get severely ill or die from COVID-19, Dkt. 54 at 3, something the Fourth Circuit has found to be a relevant inquiry for courts assessing the motions of vaccinated inmates seeking compassionate release. *See United States v. Cobb*, No. 20-7823, 2021 WL 4786616, at *1 (4th Cir. Oct. 14, 2021) (finding that the district court erred when it did not consider whether the defendant's severe medical conditions rendered the defendant particularly susceptible to severe illness or death from COVID-19 when ruling on compassionate release).[2]

---

[2] Other courts have noted that there is no bright-line rule precluding vaccinated defendants from receiving compassionate release; however, vaccination does dramatically reduce a defendant's likelihood of severe illness or death from COVID-19, which generally lowers at least some defendants' ability to demonstrate a COVID-19-related "extraordinary and compelling reason" for release. *See, e.g.*, *United States v. Sanders*, Crim. Case No. SAG-06-087, 2021 WL 1428546, at *2-3 (D. Md. Apr. 15, 2021); *United States v. Harris*, Crim. Case No. SAG-05-61, 2021 WL 1516012, at *2 (D. Md. Apr. 16, 2021); *United States v. Barton*, 1:11CR349-1, 1:12CR255-1, 2022 WL 1157978, at *4 (M.D.N.C. Jan. 18, 2022); *United States v. Hunter*, 1:16CR442-1, 2022 WL 1540118, at *5 (M.D.N.C. May 16, 2022); *United States v. McKinnie*, 24 F.4th 583, 588-89 (6th Cir. 2022) (affirming denial of compassionate release to a fully vaccinated inmate with hypertension and obesity); *United States v. Traylor*, 16 F.4th 485, 487 (6th Cir. 2021)

Given Defendant's progress with his medical conditions, as noted by Dr. Kossoff, and his vaccination status, Defendant has not established that he has a particularized susceptibility to COVID-19.  Additionally, Dr. Kossoff's statement that Defendant would potentially face a more severe case of COVID-19 can be seen as a "theoretical basis" for concern and not an inevitable outcome of Defendant's incarceration, which is not enough to establish an extraordinary and compelling reason for release.  *See United States v. Landers*, Crim. No. 2:18-cr-37-DBH-01, 2020 WL 6146490, at *1-2 (D. Me. Oct. 20, 2020).

"[I]n the context of the COVID-19 outbreak, courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility."  *United States v. Feiling*, 453 F. Supp. 3d 832, 841 (E.D. Va. 2020).  At this time, FCI Sheridan reports five inmates and eleven staff members who have tested positive for COVID-19. BOP, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/index.jsp (last visited Oct. 13, 2022).  Additionally, the facility has determined its operational level is Level 2, meaning the facility has made moderate modifications to combat COVID-19.  *See* BOP, COVID-19 Operational Levels, https://www.bop.gov/coronavirus/covid19_modified_operations_guide.jsp (last visited Oct. 13, 2022).  Although COVID-19 appears to be affecting some inmates and staff

---

(affirming denial of compassionate release to inmate with serious health conditions who was fully vaccinated); *United States v. Champion*, Case No. 1:13-cr-25(4), 2022 WL 769870, at *3-4 (S.D. Ohio Mar. 14, 2022) (finding that defendant with a congenital heart defect, asthma, prediabetes, and a cardiac murmur has a diminished risk of serious illness from COVID-19 because he is vaccinated); *United States v. Beauregard*, No. 2:18-cr-00192-JAW, 2021 WL 2080019, at *7-8 (D. Me. Mar. 24, 2021) (finding that a defendant with hypertension, obesity, and endocarditis did not establish an extraordinary and compelling reason for release due to his vaccination and low infection rates at the facility); *see also United States v. Smith*, Crim. Case No. SAG-96-086, 2022 WL 2789092, at *2 (D. Md. July 15, 2022) (acknowledging that vaccines dramatically reduce most recipients' risk of severe complications or death from COVID-19).

at FCI Sheridan, the Court does not find that Defendant's confinement at his current facility makes him particularly susceptible to COVID-19.

The Court has reviewed the record and concludes that presence of the virus at Defendant's facility, combined with Defendant's particularized susceptibility to severe illness or death should he contract COVID-19, does not constitute an extraordinary and compelling reason warranting his compassionate release. *See Feiling*, 453 F. Supp. 3d at 841.

### B.  18 U.S.C. § 3553(a) Factors

After considering whether Defendant's reasons for release are "extraordinary and compelling," the Court next considers the sentencing factors set forth in 18 U.S.C. § 3553(a). *See United States v. Kibble*, 992 F.3d 326, 329-32 (4th Cir. 2021).  These factors are:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established for–(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ; or (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements . . . ; (5) any pertinent policy statement . . . ; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).  No one factor is dispositive.

Here, even if Defendant's potential susceptibility to a COVID-19 infection in FCI Sheridan could be considered an "extraordinary and compelling" reason for relief, Defendant has not demonstrated he should be granted compassionate release under § 3553(a).  *See Kibble*, 992 F.3d at 330.  The nature and circumstances of Defendant's offense involved an attempt to sell approximately 907 grams of methamphetamine while on parole for state narcotics offenses and

9

after his prior convictions for possession, attempted robbery, possession of body armor as a violent felon, and attempting to sell a half pound of methamphetamine, all while on probation.  This offense, and the context surrounding it, does not support Defendant's release.  Moreover, Defendant has repeatedly committed offenses while on supervised release from prior convictions, Dkt. 51 at 16, giving no indication that he would not do so again if released from his current sentence.  Furthermore, Defendant has served less than 70% of his sentence.  *See United States v. Kennard*, Criminal Action No. 3:11cr147, 2021 WL 1697917, at *5 (E.D. Va. Apr. 29, 2021) (denying release when the defendant is a repeat offender and a threat to public safety, regardless of the defendant's susceptibility to COVID-19); *but see United States v. Cunningham*, 556 F. Supp. 3d 553, 557-58 (D. Md. 2021) (granting compassionate release where the defendant's prior convictions occurred more than 20 years prior to the defendant's current incarceration, the defendant had no disciplinary history while incarcerated, and the defendant had only one year left of his sentence).  Additionally, Defendant's offense for which he is currently serving time in FCI Sheridan was serious and escalated in severity from his prior offenses.

Courts in the Eastern District of Virginia have found that a defendant who poses a risk of recidivism, escalates his offenses, and continuously commits crimes while on supervised release pose a danger to the community and should not be granted an early release from his sentence.  *See United States v. Greene*, 2021 WL 1969453, at *3 (E.D. Va. May 17, 2021); *United States v. Bryant*, No. 19-cr-47-10, 2020 WL 7497805, at *6 (E.D. Va. Dec. 21, 2020); *United States v. Doyle*, No. 15-cr-191, 2020 WL 4590517, at *7 (E.D. Va. Aug. 10, 2010).  Ordering Defendant's release with over two years left in his sentence, given how he has repeatedly violated his release in the past, would minimize the seriousness of Defendant's offense and undercut the goals reflected in the § 3553(a) factors at sentencing.

Furthermore, the Court also considers Defendant's post-sentencing conduct and any rehabilitative efforts he has made. *See Concepcion v. United States*, 142 S. Ct. 2389, 2401 (2022) ("The text of the First Step Act does not so much as hint that district courts are prohibited from considering evidence of rehabilitation, disciplinary infractions, or unrelated Guidelines changes."). The Court commends Defendant's extensive efforts toward rehabilitation, including taking many hours of educational classes, dedicating time to serving as a suicide watch companion, and making personal vows to continue to better himself upon release. Dkt. 52 at 17-25. But Congress has specifically stated that rehabilitation alone is not an extraordinary and compelling reason for compassionate release. 28 U.S.C. § 994(t); *United States v. Hill*, No. 3:14-cr-114, 2020 WL 6049912, at *5 (E.D. Va. Oct. 13, 2020) ("[Defendant] displays significant progress in his rehabilitation and this Court commends him for doing so. [B]ut Congress made clear that '[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason.' 28 U.S.C. § 994(t)."); *see also United States v. Woolridge*, No. 3:09-cr-156, 2021 WL 415131, at *3 (E.D. Va. Feb. 24, 2021). Considering the § 3553(a) factors as a whole, the Court finds that these factors do not weigh in favor of Defendant's release.

## III.   CONCLUSION

Defendant has failed to establish that extraordinary and compelling reasons justify his release. Accordingly, for the foregoing reasons, it is hereby ORDERED that Defendant's Motion (Dkt. 45) is DENIED; and it is

FURTHER ORDERED that Defendant's Motion to Seal Exhibits Attached to Supplemental Memorandum (Dkt. 53) is GRANTED. The Court finds that sealing of this material is necessary in order to safeguard the privacy of the defendant. The Court has considered procedures other than sealing, but none will suffice to protect the information subject to sealing.

In exercising its inherent power to seal materials submitted to it, *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984), the Court finds that (1) the defendant has a compelling interest in maintaining the privacy of his medical records and sensitive records from the Bureau of Prisons; (2) there is a lack of countervailing significant public interest in the medical records and BOP records at issue; (3) there is a substantial probability that in the absence of sealing, the defendant's privacy interests would be harmed; and (4) there are no alternatives that would adequately protect the defendant's compelling interest.    Accordingly, Exhibits 1, 2, and 3 to Defendant's Supplemental Memorandum in Support of Motion for Compassionate Release (Dkt. Nos. 54; 54-1; 55) shall be maintained under seal and will remain under seal until unsealed by order of the Court

To appeal this decision, Defendant must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Defendant wants to appeal.  Defendant need not explain the grounds for appeal until so directed by the court of appeals.  Failure to file a timely notice of appeal waives Defendant's right to appeal this decision.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to counsel of record.

It is SO ORDERED.

Alexandria, Virginia
October 13, 2022

/s/

Rossie D. Alston, Jr.
United States District Judge